## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| ASIMIYU ADENIYI, <br><br> Plaintiffs, <br><br> v. <br><br> EXPERIAN INFORMATION SOLUTIONS, INC., and HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI D/B/A MOHELA, <br><br> Defendants. | **Case No.: 8:25-cv-260** <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Asimiyu Adeniyi ("Plaintiff" or "Mr. Adeniyi") by and through his counsel brings this action on an individual basis, against Experian Information Solutions, Inc. ("Experian or "Defendant Experian"), and, Higher Education Loan Authority of the State of Missouri d/b/a/ MOHELA ("Defendant MOHELA" or "MOHELA") (collectively, the "Defendants"), and states as follows:

## INTRODUCTION

1.     Plaintiff, an identity theft victim, brings this action against Defendant Experian and Defendant MOHELA for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. Seq.*

2.     More than twenty million people, just under 10% of all adult

Americans, are victims of identity theft each year.[1]  Federal Law requires that each consumer reporting agency ("CRA") protect victims by taking steps to remove fraudulent information from victims' reports, to ensure that only third parties with permissible purposes see victims' reports and to implement fraud alerts and security freezes at victims' requests.  This lawsuit arises from Defendant's refusal to comply with these statutory requirements and resulting failure to protect Plaintiff from identity theft and identity theft consequences.

3.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

4.      However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can, and do, sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In

---

[1] Victims of Identity Theft, 2018, 1. U.S. Dept. of Justice, Bureau of Justice Statistics.  April 2021, NCJ 256085.

*Adeniyi v. Experian Information Solutions, Inc. et. al*
*Complaint and Jury Trial Demand*

fact, Defendant Experian acknowledges this potential for misuse and resulting damage every time it sells its respective credit monitoring services to a consumer.

5.    The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

6.    These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

7.    Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

8.    One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the

public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

9.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

10.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

11.    In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

12.    The FCRA also requires Furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

13.    Plaintiff's claims arise out of Defendant Experian's and Defendant MOHELA's plainly deficient reinvestigations considering Plaintiff's multiple disputes and repeated notice that he is a victim of identity theft.

14.    Accordingly, Plaintiff brings claims against Defendant Experian, for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i, and for (i) failing to include and apply a fraud alert after receipt

of Plaintiff's dispute (wherein he stated he is the victim of identity theft), and (ii) failing to block the identity theft item(s) as disputed and supported by Plaintiff in violation of the FCRA, 15 U.S.C. § 1681c-2.

15.    Further, Plaintiff also brings claims against a Furnisher, Defendant MOHELA, for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of identity theft, and for failing to delete the disputed information from Plaintiff's credit file, in violation of FCRA, 15 U.S.C. § 1681s-2b.

16.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as described herein.

## I.  JURISDICTION AND VENUE

17.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

//

## II. <u>PARTIES</u>

19.    Asimiyu Adeniyi ("Plaintiff" or "Mr. Adeniyi") is a natural person residing in Wesley Chapel, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

20.    Defendant Experian Information Solutions, Inc. ("Experian") is a limited liability company with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Florida, including within this District. Experian can be served through its registered agent, CT Corporation System, located at 330 N Brand Boulevard, Glendale, CA 91203.

21.    Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)) to third parties.

22.    The information that Experian collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans.  Experian also collect consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

23.    Experian collects and maintains such information about consumers, whether consumers like it or not.  Consumers do not have a choice as to whether Experian collects and maintains information about them.  Not only that, but consumers cannot remove information that Experian collects and maintains about them from the Experian databases.  Further, Experian sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Experian sell.

24.    Higher Education Loan Authority of the State of Missouri d/b/a/ MOHELA ("Defendant MOHELA" or "MOHELA") is a nonprofit state created entity that services federal and private student loans, with its headquarters located at 633 Spirit Drive, Chesterfield, Missouri 63005 and is authorized to conduct business in the State of Florida, including within this District.

25.    MOHELA is an official servicer of Federal Student Aid, a credit grantor and "furnisher" of consumer information, as defined in 12 C.F.R. § 1022.41(c). MOHELA regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report.  A data furnisher, such as MOHELA, is an entity that reports information about consumers to consumer reporting agencies (CRAs), which may include credit bureaus, tenant screening companies, check verification services, and medical information services, etc.  Like CRAs and data users, data furnishers have legal obligations and rules that

must be upheld and followed pursuant to 15 U.S.C. §1681s-2b of the FCRA.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

26.    The FCRA governs the conduct of consumer reporting agencies to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

27.    The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

28.    Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

29.    Congress also recognized that CRAs such as the Defendant Experian "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). Therefore, Congress determined that there "is a need to insure that consumer reporting agencies exercise

their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."   15 U.S.C. § 1681(a)(4).

30.    For that reason, Congress ensured that the FCRA also provides special protections for victims of identity theft.

31.    One form of protection is the "block."  When a consumer identifies any information in their credit file that is the product of identity theft, the CRA **must** block (delete) the reporting of that information within four business days, provided the consumer submits:

    a.    Appropriate proof of the identity of the consumer;

    b.    A copy of an identity theft report;

    c.    The identification of such information by the consumer; and,

    d.    A statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).15 U.S.C. § 1681c-2(a).

32.    The second form of protection the FCRA provides for identity theft victims is the "fraud alert."

33.    Specifically, upon request of the consumer, a CRA **must** place an "initial fraud alert" in the file of that consumer, and provide that alert along with any credit score generated in using that file, for one year beginning on the date of the request.  Unless one year has passed, the CRA can only remove the alert if the

consumer requests removal and the CRA receives "appropriate proof of the identity of the requester." 15 U.S.C. § 1681c-1(a)(1).

34.    The third form of protection the FCRA provides for identity theft victims is a "security freeze," which a consumer can request from nationwide CRAs such as the Credit Bureau Defendants here.

35.    A security freeze prohibits a CRA from disclosing the contents of a consumer report that is subject to the freeze to any person requesting the consumer report.[2]  15 U.S.C. § 1681c-1(i)(1).  Stated otherwise, if a consumer's report is frozen, a CRA will not be able to sell it to creditors assessing credit applications from identity thieves using an affected consumer's identity.

36.    Once placed, a security freeze does not expire.  A CRA can remove a security freeze <u>only</u> at "the direct request of the consumer," or if it finds that the freeze "was placed due to a material misrepresentation of fact by the consumer." 15 U.S.C. § 1681c-1(i)(3)(A).  Furthermore, when a consumer requests removal, the CRA must first obtain "proper identification" from the consumer before removing the freeze."  15 U.S.C. § 1681c-1(i)(3)(C).

37.    The fourth and final form of protection the FCRA provides for identity theft victims is that even in the absence of a security freeze, a CRA may **only** release

---

[2] Certain statutorily exempt entities can still request and receive a frozen report.  See 15 U.S.C. § 1681c-1(i)(4).  But those exemptions do not apply to the matter at hand.

*Adeniyi v. Experian Information Solutions, Inc. et. al*
Complaint and Jury Trial Demand

a consumer report to a person "which it has reason to believe...intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished..." 15 U.S.C. § 1681b(a). When a credit transaction is not initiated by the consumer, a CRA may only release the consumer's report with the consumer's authorization or if the user is making a firm offer of credit. 15 U.S.C. § 1681b(c). No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a permissible purpose. 15 U.S.C. § 1681e(a).

38.    To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

39.    Similarly, the FCRA also imposes a duty upon the Furnishers, such as Defendant MOHELA, to reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies. (15 U.S.C. § 1681s-2b).

40.    The FCRA provides consumers with a private right of action against consumer reporting agencies, such as Defendant Experian, and data furnishers such as Defendant MOHELA, that willfully or negligently fail to comply with their

statutory obligations under the FCRA.

**FACTUAL ALLEGATIONS**
**Identity Theft Incident**

41.    On or about September 30, 2024, Plaintiff received a letter from MOHELA, claiming he was one payment past due on a student loan with a balance of approximately $47,000.

42.    Plaintiff was shocked and confused upon receipt of the letter from MOHELA. Plaintiff never took out any student loans and had never heard of MOHELA before receiving the letter.

43.    In an effort to obtain more information and figure out what was going on, Plaintiff contacted MOHLA and requested information to help him identify the individual that opened the student loan account.

44.    While speaking with a representative of MOHELA, Plaintiff learned that the loan was a Parent Plus loan for a student at Long Island University and was opened on September 21, 2022. Plaintiff was flabbergasted upon hearing that the student's name on the loan is Akila, Plaintiff's abusive wife's daughter. Plaintiff and his wife have been separated since 2022.

45.    Plaintiff never applied for or took out the fraudulent student loan. Furthermore, Plaintiff never authorized his stepdaughter to obtain the student loan and did not know about the loan until receiving the letter from MOHELA on or about September 30, 2024.

*Adeniyi v. Experian Information Solutions, Inc. et. al*
Complaint and Jury Trial Demand

46.      Plaintiff also confirmed discrepancies in the personal details provided by MOHELA, including the fact that he is not a U.S. citizen and that he was not associated with the address or telephone number on the account.

47.      Thereafter, Plaintiff requested copies of his consumer reports from Defendant Experian, and non-parties Trans Union and Equifax, and was shocked to find information that did not belong to him.

48.      His consumer reports included the student loan account serviced by MOHELA that did not belong to him.

49.      Specifically, the MOHELA account (the "Fraudulent Account") which was published on Plaintiff's consumer reports contained the following information:

    a.   Partial Account No. 2638419091E0012022092124****
         Opened: September 21, 2022
         Original Balance: $43,849

50.      Based on the information Plaintiff obtained from MOHELA, and the inaccurate information included in his consumer reports, Plaintiff reasonably suspected that he was the victim of identity theft.

**Plaintiff's First Dispute of the Fraudulent Account with Defendant Experian**

51.      Concerned that Defendant MOHELA would continue to report inaccurately to one or more consumer reporting agencies that Plaintiff was responsible for the Fraudulent Account, Plaintiff determined that he needed to escalate the issue to prevent further damage to his credit files and consumer reports.

52.     On or about October 13, 2024, Plaintiff disputed the Fraudulent Account with Defendant Experian. Specifically, Plaintiff disputed that the Fraudulent Account was not his, but rather the product of fraud and identity theft.

53.     Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

54.     Plaintiff requested that the identity theft information, i.e., the Fraudulent Account, be removed and/or blocked from his credit file.

### The Credit Bureau Agencies' Method for Considering Consumer Credit Report Disputes

55.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. See 15 U.S.C. § 1681i(a)(5)(D).

56.     The credit bureaus, Defendant Experian and non-parties Equifax, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

57.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."

58.     It is also known industry wide as the CDIA's "Credit Reporting

Resource Guide."

59.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

60.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

61.    The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

62.    These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

63.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

64.    The data furnishers, like Defendant MOHELA, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate

and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

65.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Defendant Experian's Unreasonable Dispute Reinvestigation**

66.    On October 31, 2024, Experian issued a communication to Plaintiff in response to Plaintiff's October 13, 2024, dispute.

67.    Upon information and belief, Experian sent MOHELA an ACDV upon receiving Plaintiff's October 13, 2024, dispute.

68.    Upon information and belief, MOHELA received Experian's ACDV and failed to adequately investigate Plaintiff's October 13, 2024, dispute.

69.    On or about October 31, 2024, Experian confirmed receipt of Plaintiff's dispute and informed Plaintiff it determined that the Fraudulent Account as described in Plaintiff's dispute had been "verified as accurate."

70.    Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

71.    Defendant Experian failed to reasonably reinvestigate Plaintiff's October 13, 2024, dispute and failed to block the identity theft information.

72.     Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

73.     Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information, which was the product of identity theft, from Plaintiff's file.

### MOHELA's Unreasonable Dispute Reinvestigation

74.     Upon information and belief, in or around October 2024, Defendant MOHELA received Experian ACDV and failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

75.     Upon information and belief, Defendant MOHELA verified the disputed Fraudulent Account as accurate in response to Defendant Experian's ACDV.

76.     Defendant MOHELA violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

//

**Plaintiff's Second Dispute to Experian and First Dispute with Non-Parties Trans Union and Equifax**

77.    On or about October 20, 2024, concerned that Experian and MOHELA were not going to remove the Fraudulent Account from Plaintiff's credit files, Plaintiff submitted an Identity Theft Report with the Federal Trade Commission ("FTC Report").

78.    In the FTC Report, Plaintiff stated that he suspected that his abusive wife, Charda Gross ("Mrs. Gross") had stolen his identity and opened the Fraudulent Account.

79.    On or about October 22, 2024, Plaintiff again disputed the Fraudulent Account with Experian.  Specifically, Plaintiff disputed that the Fraudulent Account was not his, but rather was the product of fraud and identity theft. Plaintiff also disputed the Fraudulent Account with non-parties Trans Union and Equifax.

80.    Plaintiff included a copy of his Florida driver's license, social security card, and provided his current mailing address, social security number, date of birth, and phone number.

81.    Plaintiff also enclosed a copy of the FTC Report.

82.    Plaintiff provided sufficient information to identify his credit file and sufficient information to support his dispute.

83.    Plaintiff requested that the identity theft information be blocked and/or deleted from his credit file.

*Adeniyi v. Experian Information Solutions, Inc. et. al*
Complaint and Jury Trial Demand

### *Defendant Experian's Unreasonable Dispute Reinvestigation*

84.    Experian received Plaintiff's second dispute on or about October 29, 2024.

85.    As of the date hereof, Experian has failed to respond to Plaintiff's second dispute.

86.    Upon information and belief, Experian continues to report the Fraudulent Account in Plaintiff's credit file.

87.    On the other hand, non-parties Trans Union and Equifax both removed the Fraudulent Account from Plaintiff's credit file after receiving his October 22, 2024, dispute.

88.    Defendant Experian failed to adequately review all of the information provided to it by Plaintiff.

89.    Defendant Experian failed to reinvestigate Plaintiff's second dispute and failed to block the identity theft information.

90.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed information was the product of identity theft.

91.    Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information, which was the product of identity theft,

*Adeniyi v. Experian Information Solutions, Inc. et. al*
                                    Complaint and Jury Trial Demand

from Plaintiff's file.

## Plaintiff Applies for a Credit Card with Capital One

92.    On or about December 23, 2024, Plaintiff, in need of credit, applied for a credit card with Capital One.

93.    For Capital One to make a determination on Plaintiff's credit application, it would need to obtain copies of his credit files. Plaintiff provided Capital One with his personal identification information, including his Social Security number, and authorized it to obtain copies of his credit files.

94.    On or about December 23, 2024, Experian, in accordance with its standard procedures, prepared and sold a credit report about Plaintiff to Capital One in response to Plaintiff's credit card application.

## Capital One Denies Plaintiff's Credit Application

95.    On or about December 23, 2024, Capital issued an adverse action notice to Plaintiff, denying Plaintiff's credit card application.

96.    Upon information and belief, Capital One denied Plaintiff's credit application due to information reported by Defendant.

97.    Upon information and belief, Experian included the inaccurate Fraudulent Account in the credit report it sold to Capital One.

98.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published to Barclays in response to Plaintiff's credit card application.

## PLAINTIFF'S DAMAGES

99.     Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

100.     Plaintiff contacted Defendant MOHELA and Defendant Experian and disputed the Fraudulent Accounts as the product of fraud and identity theft.

101.     Plaintiff also filed an FTC Identity Theft Report.

102.     Plaintiff disputed with the non-party Equifax and non-party Trans Union.

103.     Plaintiff identified himself as an identity theft victim and even provided information pertaining to the individual, he believed was responsible, Mrs. Gross.

104.     Non-parties Equifax and Trans Union blocked the disputed Fraudulent Account that were the product of identity theft upon Plaintiff's initial request. Notably, Defendant Experian did not.

105.     Instead, Defendant Experian repeatedly disregarded Plaintiff's credible disputes.

106.     Upon information Defendant Experian refused to even conduct a reinvestigation in response to Plaintiff's second disputes despite the fact that

Plaintiff enclosed a copy of a FTC Report.

107.    Despite Plaintiff's disputes of the Fraudulent Account, which was the product of fraud, Defendant Experian hardly waivered in their refusal to block the same.

108.    Plaintiff reasonably believes that Defendant MOHELA failed to conduct a reasonable investigation. Defendant MOHELA failed to have the disputed Fraudulent Account removed from Plaintiff's Experian credit file, and instead verified the Fraudulent Account as accurate to Defendant Experian, inaccurately suggesting that Plaintiff opened the Fraudulent Account.

109.    As a direct result of Defendant's ardent refusal to remove the disputed Fraudulent Account, the Defendants have continued to saddle Plaintiff with an account with a significantly high balance, which was the product of identity theft.

110.    Further, and due to Defendants' inexplicable refusal to remove the Fraudulent Account from an identity theft victim's credit file, Plaintiff expended countless hours disputing the same, to no avail.

111.    To put it simply, Defendants' conduct disrupted Plaintiff's life. Plaintiff has lost countless hours suffering and worrying over whether someone would seek to collect the outstanding balances on the Fraudulent Account from him.

112.    The inaccurate reporting of the Fraudulent account has caused Plaintiff to suffer tremendously. Plaintiff, having to live with a record of exorbitant debt that

does not belong to him, has lost his piece of mind.

113.    Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety.  Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate her disputes. Further, Plaintiff reasonably believes that the Fraudulent Accounts have negatively impacted and depressed his credit score.

114.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

115.    At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

116.    As a standard practice, Defendant Experian does not conduct independent investigations in response to consumer disputes.  Instead, it merely parrots the response of the data furnishers, like Defendants MOHELA, despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received

from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs*., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

117.    The Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, the Defendants' violations of the FCRA are willful.

118.    The Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

119.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Account which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Accounts which were the product of identity theft. Additionally, Plaintiff suffers interference with daily

activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(First Claim Against Defendant Experian)**

120.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

121.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

122.    On at least one occasion, Defendant Experian prepared patently false consumer reports concerning Plaintiff.

123.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Defendant Experian readily sold such false report(s) to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff was responsible for the Fraudulent Account.

124.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

125.    As a result of the Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Account which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Account. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Defendant Experian.

126.    Defendant Experian's conduct, actions, and inactions were willful, rendering Defendant Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover

under 15 U.S.C. § 1681o.

127.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim Against Defendant Experian)**

128.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

129.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day limitation for the completion of such an investigation. Id.

130.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

131.    On numerous occasions during 2024, Plaintiff disputed the inaccurate information with Defendant Experian and requested that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading, and highly

damaging to him, namely, the Fraudulent Account that was the product of identity theft.

132.    Plaintiff disputed the identity theft information with Defendant Experian.

133.    Plaintiff supported his dispute(s) with a copy of a FTC Identity Theft Report.

134.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

135.    Defendant Experian's "reinvestigations" was rendered that much more deficient considering non-party Trans Union and non-party Equifax deleted the same disputed information upon Plaintiff's dispute.

136.    Defendant Experian's refusal to delete the identity theft information provided credibility to the Fraudulent Account and forced an identity theft victim to be repeatedly confronted with the evidence of identity theft.

137.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the

disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

138.    As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Account, which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Account. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Defendant Experian.

139.    Defendant Experian's conduct, actions, and inactions were willful, rendering Defendant Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover

under 15 U.S.C. § 1681o.

140.     Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (Third Claim Against Defendant Experian)

141.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

142.     Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

143.     Plaintiff repeatedly submitted ample evidence of the fact that he was an identity theft victim.    Going so far as to identify the individual he believed responsible, Mrs. Gross, to Defendant Experian.  Plaintiff further supported the fact that he was an identity theft victim by providing Defendant Experian with a copy of a FTC Identity Theft Report.

144.     Defendant Experian should have blocked the Fraudulent Account but failed to do so at every turn.

145.     As a result of Defendant Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit

from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Account, which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Account. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Defendant Experian.

146.    Defendant Experian's conduct, actions, and inactions were willful, rendering Defendant Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

147.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information**
**(First Claim Against Defendant MOHELA)**

148.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

149.    Defendant MOHELA caused the Fraudulent Account to be added to Plaintiff's credit file with the national credit bureaus, including but not limited to Defendant Experian.

150.    Defendant MOHELA violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to Defendant Experian; and, by failing to cease furnishing inaccurate information relating to Plaintiff to Defendant Experian.

151.    As a result of Defendant MOHELA's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Fraudulent Account which was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the Fraudulent Account. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep

loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned and disbelieved by Defendant MOHELA.

152.    Defendant MOHELA's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendant MOHELA was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

153.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant MOHELA in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

(i)      Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

(ii)     Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

(iii)    Punitive damages pursuant to 15 U.S.C. §1681n;

(iv)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o;

(v)     All pre-judgment and post-judgment interest as may be allowed under

the law; and

(vi)    Granting further relief, in law or equity, as this Court may deem

appropriate and just.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 31st day of January 2025

/s/ David Pinkhasov
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS
68-29 Main Street
Flushing, NY 11367
T: (718) 701-4605
F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

Attorneys for Plaintiff,
Asimiyu Adeniyi